UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| MECO CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ACADEMY, LTD. and ACADEMY MANAGING CO., LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:26-CV-00142-DCLC-CRW |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction [Doc. 15] and Defendants' Motion to Stay and Compel Mediation [Doc. 37]. These motions are fully briefed and ripe for resolution. As explained below, because the parties contractually agreed to mediate their claims as a condition precedent to any court proceeding, the Motion to Stay and Compel Mediation is **GRANTED**, and the Court will delay ruling on the Motion for Preliminary Injunction until after the parties have completed mediation.

## I. BACKGROUND

Plaintiff MECO Corporation ("MECO") manufactures and sells charcoal and barbecue grills with a square-shaped design. MECO owns the trade dress for its grills, registered as U.S. Trademark Reg. No. 8,123,149,[1] and sells grills embodying this trade dress under the AMERICANA GRILLS and WALK-A-BOUT brand names. [Doc. 1, ¶¶ 18, 37]. MECO also owns federal trademark registrations covering certain marks related to those brands. [*Id.* at ¶ 41].

[1] MECO also owns U.S. Trademark Nos. 3,946,388 and 3,946,389 on the Supplemental Register which cover a "3-dimensional grill configuration consisting of a square shaped hood and body with rounded corners and edges" for or in connection with barbecue grills. [Doc. 1, ¶¶ 19-21].

MECO and Defendant Academy, Ltd. ("Academy")[2] have enjoyed a longstanding business relationship dating back to 2005. Over the past two decades, Academy has sold MECO's grills online and at its physical retail locations. On or around March 23, 2026, Academy began selling a competing square-shaped grill under its own brand name, which MECO claims is "practically indistinguishable, if not literally identical" to MECO's grills, and which MECO alleges copies its registered trade dress. [*Id.* at ¶ 44]. MECO also alleges that Academy's grills are displayed beneath signage bearing MECO's registered marks and inside MECO's product packaging. MECO contends that these actions are calculated to mislead consumers into believing that Academy's grills are genuine MECO products.

On July 2, 2026, MECO initiated this lawsuit, alleging trade dress infringement (Count I), trademark infringement (Count II), unfair competition via the use of MECO's trade dress (Count III), unfair competition via the use of MECO's word and design marks (Count IV), false advertising (Count V), violations of the Tennessee Consumer Protection Act (Count VI), trademark infringement under Tennessee common law (Count VII), and unfair competition under Tennessee common law (Count VIII). On July 27, 2026, MECO filed a motion for preliminary injunction seeking to enjoin Academy from (1) manufacturing, distributing, offering for sale, or selling grills embodying MECO's square grill trade dress or any confusingly similar trade dress; (2) using MECO's registered AMERICANA GRILLS or WALK-A-BOUT marks, or any confusingly similar marks, on signage, packaging, or in any other manner in connection with the advertisement, promotion, or sale of Academy's grills; and (3) displaying Academy's grills inside MECO's product packaging or in any other manner likely to cause confusion as to the source,

---

[2] Defendant Academy Managing Co., LLC is Academy, Ltd.'s sole general partner. MECO's claims treat both entities as one and the same.

sponsorship, or affiliation of Academy's products. [Doc. 15]. On September 9, 2026, Academy filed its Answer to the Complaint and raised three counterclaims against MECO. [Doc. 31]. Academy has also moved to compel mediation and stay the case, which the Court will address first. [Doc. 37].

## II. ANALYSIS

### A. Motion to Stay and Compel Mediation

Academy argues that this case must be mediated because the parties agreed to a binding mediation clause in Academy's purchase contracts of MECO products. The parties' established course of conduct involved Academy submitting purchase orders to MECO that MECO had the option to accept and fulfill. [Doc. 39, ¶ 4]. Every purchase order MECO accepted incorporated Academy's Terms and Conditions of Purchase.[3] [Doc. 38 at pg. 1]. These Terms and Conditions, which are governed by Texas law, provide: "Any type of dispute between the Parties hereto (other than those arising under Section 9.1 (Indemnification)), shall, as a condition precedent to any arbitration or court proceeding, be mediated by the Parties." [Doc. 39-1, ¶ 15.1]. Academy contends that this mediation clause broadly covers all disputes between the parties. MECO disagrees that the Court must compel mediation under this clause, but it still agrees to mediate all claims pursuant to Local Rule 16.4.

Under Texas law, a court reviewing a dispute-resolution provision must "determine the intent of the parties as expressed by the plain language of the contract." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 285 (Tex. 2021); *see Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 587 (Tex. 2023) ("In construing contracts, we look to the plain language as the written

[3] Academy provided a representative purchase order incorporating the Terms and Conditions dated October 13, 2025, wherein MECO sold 336 grills to Academy. [Doc. 39-2].

expression of the parties' intent."). Texas courts resolve doubts about the scope of a dispute-resolution clause in favor of coverage, *see Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018), but that presumption "is not without limits and cannot serve to stretch a contractual clause beyond the scope intended by the parties." *Cash Am. Pawn LP v. Meza*, 653 S.W.3d 340, 342 (Tex. App. 2022).

In *Henry v. Cash Biz, LP*, the plaintiff-borrowers entered into short-term loan contracts with the defendant. 551 S.W.3d at 113. Each loan contract contained an arbitration provision that provided that "all disputes … shall be resolved by binding arbitration," and specified that "'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation ... all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision." *Id.* As security for the loans, the borrowers provided postdated checks made out to the defendant. After the borrowers defaulted on their loans, the defendant deposited the checks, which were returned for insufficient funds. *Id.* The defendant provided information to the district attorney, who charged the borrowers with issuance of bad checks. *Id.* The borrowers then sued the defendant, who moved to compel arbitration. *Id.* The Texas Supreme Court held that because the scope of the arbitration clause included all disputes, it was "very broad and encompass[ed] more than claims 'based solely on rights originating exclusively from the contract.'" *Id.* at 115 (quoting *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 439 (Tex. 2017)). Therefore, even though the plaintiffs' claims were not for the breach of any specific obligations under the contracts, the Texas Supreme Court held that "their claims are based on the manner in which Cash Biz pursued collection of loans and are at least indirectly related to the contracts the Borrowers signed obligating them to repay the loans." *Id.* at 116. Accordingly, the borrowers' claims fell within the scope of the arbitration provision. *Id.*

Here, the mediation clause at issue covers "all disputes" between the parties, with the only limitation being that disputes concerning indemnification need not be mediated. By a plain reading of the contract, this clause covers MECO's claims—even though its claims do not originate directly from the contract. *Cash Biz*, 551 S.W.3d at 115.

MECO argues that because the Terms and Conditions begin with the words "These Terms and Conditions of Purchase . . . shall govern the Purchase Orders submitted by Academy" [Doc. 39-1 at 2], it does not apply to its disputes which are unrelated to the purchase orders. However, MECO's claims are at least indirectly related to the purchase orders. The Terms and Conditions of the purchase orders grant Academy a license to use MECO's marks to market and sell MECO's products [Doc. 39-1, ¶ 11.2.1]. MECO's claims that Academy is improperly using its marks to market Academy's competing grills relates directly to the scope of the license in the contract. Additionally, Academy's purchase and sale of MECO's products over the course of their business relationship is relevant to determine whether Academy acted intentionally and willfully to use MECO's trade dress or marks. Therefore, even if the contract did not broadly cover "all disputes," since MECO's claims are indirectly related to the contracts, they would still require mediation.

MECO also argues that Texas courts require a nexus between the dispute and an agreement to mediate, following the holding in *Cash America Pawn LP*. In *Cash America*, a customer agreed to pawn their personal items pursuant to a contract which required arbitration of any dispute "arising under this agreement or in any way connected with, related or incidental to the dealings between the parties with respect to this agreement … or in any way arising out of or between the relationship between the parties whether now existing or hereafter arising …" 653 S.W.3d at 343. Years later, the customer slipped and fell at a different Cash America store and filed suit. *Id.* at 342. The court declined to read the arbitration clause to mean that the parties "intended to arbitrate

every possible dispute between them into perpetuity," as the pawn agreement "signifie[d] an intent to arbitrate disputes relating to the underlying pawn transaction." *Id.* at 343. Accordingly, because the slip-and-fall claim "ha[d] no relationship to that pawn transaction," the court held that it need not proceed to arbitration. *Id.*

Contrary to MECO's contention, *Cash America* is distinguishable from the instant case because here the mediation clause does not contain the same limiting language indicating an intent to only mediate those claims relating to the underlying purchase contracts. The parties agreed to mediate "all disputes," other than those concerning indemnification, and the Court must respect the benefit of the parties' bargain. Additionally, the disputes here are at least indirectly related to the underlying purchase contracts. MECO does not contend that the Terms and Conditions or the mediation clause are invalid, and the Court will enforce it because MECO's claims fall within its scope.

Although this case must proceed to mediation pursuant to the parties' contract, a stay is not required. Still, because all the claims must proceed to mediation, the Court finds that a brief 50-day stay[4] is appropriate to grant the parties sufficient time to complete mediation.[5] A stay will preserve the parties' contractual rights, avoid unnecessary judicial intervention in potentially resolvable disputes, and permit the litigation to resume promptly if mediation proves unsuccessful. If mediation is completed before the 50-day period, the Court will terminate the stay and will then consider any motions or claims remaining for litigation.

---

4 MECO's proposed mediation schedule requests that mediation be completed within 45 days. [Doc. 51, pg. 10]. To account for the winter holidays, the Court will extend the timeline to 50 days.

5 Additionally, because mediation is "a condition precedent to any arbitration or court proceeding," a stay is appropriate here to allow MECO to satisfy the condition precedent. [Doc. 39-1, ¶ 15.1].

## B. Motion for Preliminary Injunction

MECO asks the Court to both set a hearing on its motion for a preliminary injunction on a date after the 50-day mediation window and to rule now, on the briefing, on the portion of its motion directed to Academy's use of MECO's marks, displays, fixtures, packaging, and signage in connection with Academy's grills. MECO states that "[m]ediation and the preliminary injunction motion can proceed together. The parties can mediate in the weeks before the hearing, and if mediation resolves or narrows the dispute, the hearing can be adjusted accordingly." [Doc. 51, pg. 10].

In support of its position that the Court can rule on its pending motion for preliminary injunction while mediation occurs, MECO references *Performance Unlimited v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995). *Performance Unlimited* contemplated whether the Federal Arbitration Act (FAA) bars a court from ruling on a motion for preliminary injunction when there is a binding arbitration agreement. *Id.* at 1375. But the Court need not address that distinction now because MECO has proposed a hearing after the mediation window to permit the parties to address their dispute in mediation [Doc. 51, pg. 10]. The Court finds that such a delay is reasonable under the circumstances. MECO waited about four months prior to it seeking relief. Sales began on March 23, 2026, and the Complaint was not filed until July 2, 2026, with the motion for preliminary injunction filed on July 27, 2026. That delay suggests that the parties can proceed to mediation on an expedited basis. Should circumstances change pending mediation, MECO can file a motion seeking emergency relief and the Court will then address whether mediation is a condition precedent to addressing the motion for a preliminary injunction.

# III. CONCLUSION

For the reasons stated herein, Academy's Motion to Stay and Compel Mediation [Doc. 37] is **GRANTED**. The parties are **DIRECTED** to complete mediation within 50 days and "shall mutually agree upon a mediator and shall schedule and conduct the mediation at a mutually convenient time and location. Each Party shall bear its own costs and expenses associated with such mediation, except that the Parties agree to split equally the costs and expenses of the conducting mediator." [Doc. 39-1, ¶ 15.1]. It is hereby **ORDERED** that the proceedings in this matter are **STAYED** until **December 30, 2026**. The parties shall file a status report upon the completion of mediation.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge